[Civ. No. 4682.   First Appellate District, Division Two.—February 13, 1924.]

REDWOOD HIGHLANDS COMPANY (a Corporation), et al., Appellants, v. THE TOWN OF REDWOOD CITY (a Municipal Corporation), et al., Respondents.

[1] STREET LAW — IMPROVEMENT ACT OF 1901 — INSTALLMENT PAYMENTS—TERM—UNAUTHORIZED SECOND ASSESSMENT.—Where street improvements proceedings had and taken under the provisions of "The Local Improvement Act of 1901" (Stats. 1901, p. 34) give the property owners nine years in which to make their payments, there is no authority for issuing bonds for a term of ten years, and in so far as such bonds purport to bear interest for such additional year they create no obligation; and the insufficiency of moneys, in the special fund created under the provision of said act, to pay such purported interest charge will not furnish the basis for a second assessment, under the provisions of section 20 of said act, to provide the funds to make such payment.

[2] ID.—ADVANCE PAYMENTS—FAILURE TO CALL IN BONDS—ADDITIONAL BURDEN.—Where property owners in paying their assessments exercise the right of making the deferred payments in advance, the municipal officers by allowing the money so paid in to lie idle and by failing to call in the bonds for payment, as the statute contemplates, and the bondholders by failing to present their bonds, cannot create an additional interest charge on the property owners which they do not by contract assume and which is not created by the provisions of the statute.

[3] ID.—SECOND ASSESSMENT—FORMER JUDGMENT—ABSENCE OF BAR. An action by the property owners to enjoin the municipal officers from levying a second assessment, under section 20 of "The Local Improvement Act of 1901," to make up an alleged insufficiency of funds, is not barred by a judgment, in a prior action by certain bondholders, directing said municipal officers to proceed to levy said second assessment, where said property owners were not parties to said prior action and they did not have notice, either actual or constructive, of said action.

APPEAL from a judgment of the Superior Court of San Mateo County.  Benj. K. Knight, Judge.  Reversed.

The facts are stated in the opinion of the court.

H. W. B. Taylor and Thos. P. Boyd for Appellants.

Albert Mansfield and Theodore J. Savage for Respondents.

STURTEVANT, J.—The plaintiffs commenced an action against the defendants to obtain an injunction restraining the defendants from proceeding to cloud the title of the plaintiff land owners by a purported assessment for local improvements. Judgment went for the defendants and the plaintiffs have appealed, bringing up the judgment-roll and a bill of exceptions.

The record presents no question regarding the sufficiency of the pleadings. No witness was examined on the trial, but all matters were stipulated to in a written stipulation executed by the parties and filed of record. The stipulation was so drawn that many facts alleged in the pleadings are referred to as paragraphs of the complaint or answer, as the case may be, and in addition to such stipulations many probative facts were also stipulated to. It will not be necessary for us to recite the facts admitted in the pleadings and separate them from facts otherwise admitted in the record. As the case was tried upon an agreed statement of facts, counsel stipulated that the trial court need not make any findings and none were made.

Except as hereinafter stated, the record discloses facts showing that early in April, 1909, the board of trustees of the Town of Redwood City commenced proceedings looking toward the creation of two local assessment districts, thereafter numbered 13 and 14. The proceedings were had under "The Local Improvement Act of 1901." (Stats. 1901, p. 34.) A resolution was passed on the nineteenth day of April, 1909, referring the contemplated work to a civil engineer; on the seventh day of September, 1909, the engineer filed his report and on the same date the board of trustees, with the exception of changing the names of certain streets in the district, adopted the report of the engineer and set the eighteenth day of October, 1909, as the time for parties interested to show cause, if any they had, why the improvements should not be carried out; that a hearing was had on the date last mentioned, and on the 20th of October the clerk transmitted to the tax collector the map, etc. The tax collector thereupon set the twelfth day of January, 1910, as the date of sale. That, as provided in section 13 of the statute above mentioned, before January 12, 1910, the owners filed written agreements waiving objections and promising

to pay in ten payments, the first one on date of agreement and one each year for nine (9) years. Each of said agreements contained a paragraph as follows: "This agreement is made with the understanding and upon the condition that the entire unpaid balance of said installments of principal may be paid at any time before maturity, together with interest on all deferred payments until the date of maturity of the installment next falling due." After the notice of sale above mentioned and after having received the installment agreements, the tax collector reported to the board of trustees, and the board of trustees ordered issued, bonds worded as provided in section 18 of the statute above referred to. The bonds were dated January 2, 1910, and a sample copy was as follows:

"United States of America
State of California
TOWN
No. 2                OF                $1000
REDWOOD CITY
Local Improvement Bond
District No. 14

"Under and by virtue of an act of the legislature of the state of California entitled 'An act to provide for local improvements upon streets, lanes, alleys, courts, places and sidewalks, and for the construction of sewers within municipalities, such act to be known as The Local Improvement Act of 1901,' (which became law under constitutional provision without governor's approval February 26th, 1901, Statutes of 1901, page 34), the Town of Redwood City, out of the fund hereinafter referred to, will pay to the bearer the sum of

ONE THOUSAND DOLLARS

United States gold coin of the same weight and fineness as that now issued from the mints of the United States of America, with interest thereon in like gold coin, at the rate of seven (7) per cent per annum, all as hereinafter specified, and at the office of the treasurer of said municipality.

"This bond is payable exclusively from street improvement fund number 14, and neither the municipality, nor any officer thereof, shall be holden for payment otherwise of its principal or interest; and installments of principal and interest accruing thereon shall be payable out of any moneys

in said fund at the date of their maturity, in order of presentation, and shall be secured by all agreements and liens provided for by this act and arising out of the improvement to which said fund relates. The term of this bond is ten (10) years from its date, and at the expiration of said time, the whole sum then unpaid shall be due and payable; but on the second day of January of each year after its date, an even annual proportion of its whole amount is due and payable, upon the presentation of the coupon therefor, until the whole is paid, with all accrued interest, at the rate of seven (7) per cent per annum.

"The interest is payable semi-annually, to wit: On the second days of January and July in each year hereafter, upon the presentation of the coupons therefor, the first of which is for the interest from date to the next second day of July, and thereafter the interest coupons are for semi-annual interest, except the last, which is for interest from the semi-annual payment next preceding and to the date of the final maturity of this bond. Should default be made in the annual payment upon the principal, or in any payment of interest, the holder of this bond is entitled to declare the whole unpaid amount to be due and payable, and to have all liens and agreements which are security for said fund and are enforcible, immediately enforced in payment thereof. The principal hereof may be paid, at the option of said municipality, at any time before maturity. Notice of such redemption must be published by the treasurer of said municipality once in some newspaper of general circulation, published in said municipality, or at the county-seat of the county in which the same is located, and at the expiration of one month from said publication, interest on all principal sums covered by such notice shall cease.

"At said Town of Redwood City, county of San Mateo, state of California, the 2nd day of January, in the year one thousand nine hundred and ten.

"GEORGE A. MERRILL,

"President of the Board of Trustees of the Town of Redwood City.

"(Seal)                                        F. K. TOWNE,

"Treasurer of the Town of Redwood City."

As to both districts it is stipulated, "That the said tax collector proceeded to and did collect all of said assessments

and all the installments which have fallen due under the said installment agreements." As to both districts it appears that many of said agreements were paid, both principal and interest, before maturity. It is stipulated that the first assessment included the cost of doing the work by the contractor and all the incidental expenses incurred in connection with the work, such as clerical, engineering, inspecting, printing, and advertising. This leaves the item of interest as the sole debatable matter.

Commencing on December 15, 1919, the board of trustees of the Town of Redwood City commenced, and since then have proceeded to, and unless restrained by a judgment in this action will proceed to levy a second assessment to collect a deficit of $4,590.66 and incidental expenses in collecting the same in the further sum of $225, as and for district number 13; and to collect $2,008.94 and like incidental expenses in the further sum of $205, as and for district number 14. In so doing the municipal officers are acting under the assumption that it is their duty so to do by virtue of the provisions of section 20 of The Local Improvement Act of 1901. (Stats. 1901, p. 42.) That section provides as follows: "In case the first assessment for any local improvement proves insufficient, a second may be made in the same manner as nearly as may be, except that no protest shall be entertained upon subject matter already decided in the first hearing, and so on until sufficient money shall have been realized to pay for such local improvement." As just stated above, the record discloses that in neither district was any item of the cost of the improvements omitted; but that the assessment covered every single item unless it may be said that an item of interest was omitted. We confine our consideration, therefore, to the subject of interest. No interest item mentioned in the statute was omitted. It is not claimed that any item of interest was omitted from the written agreements of the taxpayers or that the taxpayers have not fully paid all interest in accordance with their written agreements. If any item of interest arises it arises therefore as on the face of the bonds as distinguished from the statute and all of the other proceedings had under the statute.

It requires but a reading of the statute to see that it provides two sets of written instruments. First, the tax-

payer's written agreement, which is an obligation between
him and the municipality, and, second, certain bonds which
are an obligation between the bondholders and the munici-
pality and the forms of which are prescribed by the statute.
Moreover, it is clear from the provisions of the statute and
the provisions of the instruments just mentioned that the
municipality and its officers are acting merely as agents and
are assuming no liability. Furthermore it is patent that
the statute provides a liability as to the taxpayers which is
stated in their written agreements just mentioned and cer-
tain rights as to the bondholders which are stated in each
bond. Although it is not expressly so provided, it is clear
beyond the peradventure of a doubt that the right of the
bondholder to receive interest is coextensive with the lia-
bility of the taxpayer to pay interest—no more and no less.
Otherwise we would be holding that the taxpayer can be
compelled to pay interest for the use of moneys covering a
period of time that the district had no such use. If such
power was to be conferred the same must needs be expressed
clearly and not left to implication. On this point the re-
spondents contend that the statute gives authority to the
board of trustees to fix the number of deferred payments
in which the taxpayer must pay his assessment and that it
likewise gives the board of trustees the power to fix the term
of the bonds not exceeding ten (10) years and that the acts
of the board of trustees done within such granted powers
cannot be said to be in excess of its jurisdiction. The vice
in the argument rests in the *quantum* of power assumed to
be granted. The statute is one dealing with the power to
construct local improvements and to pay therefor. Although
the statute does not expressly state that the power to tax
the property owner must be so exercised as to conform to
and be limited by the amount of the costs and interest, never-
theless such was the clear meaning of the statute.

[1] For the payment, and to secure the payment, of
principal and interest to the bondholders, the statute pro-
vides for the execution, acceptance and preservation of the
written agreements of the taxpayers. Those papers provide
a special fund. The statute, and the face of the bonds in
the form prescribed by the statute, makes the bonds, both
principal and interest, payable out of said special fund. The
maximum amount of the special fund cannot exceed the

amount of the principal and interest thereon for the lawful term of the bonds. It may be less, because the taxpayer is expressly authorized to anticipate the payment of the principal of his obligation and thus terminate his future liability as to interest. There is no recital in the bonds that precludes a consideration of any of the above matters. The bonds on their face recite that they were issued under the statute mentioned. All of the proceedings and the statute were of record. A slight examination of the records would have disclosed that the bonds were issued for a term of ten (10) years, whereas, under the facts, the term should have been nine (9) years. As the taxpayers were given nine (9) years in which to make their payments there was no authority for issuing bonds under terms that would create a greater burden on the taxpayers. The exercise of an unauthorized power imposes no obligation. And, under the facts presented by this record, it is clear that to the extent that the bonds purported to bear interest for the tenth year, the bonds created no obligation. But the purported interest on the face of the bonds for the unauthorized year is a part, at least, of the ground asserted by the respondents as supporting their right to levy the alleged supplemental assessment. To the amount of the tenth year's interest there was no basis for the second assessment.

[2] The appellants contended that when the property owners in paying their assessments exercised the right of making the deferred payments in advance, that the moneys so paid in were allowed to lie idle and bonds were not presented nor called in for payment as the statute contemplated, and call attention to the last sentence contained in the statutory form of bond. The respondents in their briefs seem to admit the fact, but claim that the fact is immaterial. We do not agree with this claim. The municipal officers could not by failing to call in the bonds, and the bondholders could not by failing to present their bonds, create an additional burden on the taxpayers which the taxpayers do not by contract assume and which was not created by the provisions of the statute. The bondholders were presumed to know the statute and to know the provisions of the bonds. (*Village of Wilmette* v. *People*, 214 Ill. 107 [73 N. E. 327, 329].)

[3]  The respondents interposed a plea claiming that a certain judgment was a bar. That judgment was rendered by the first division of the district court of appeal in a *mandamus* proceeding commenced on the eighteenth day of October, 1919, by L. N. Jesson and E. R. Jesson, as bondholders, against Clark K. Mabie et als., as the board of trustees of the Town of Redwood City, a municipal corporation. In the judgment rendered the court held that the defendants should under the facts pleaded in the *mandamus* proceeding proceed to levy the second assessment which is involved in this case. It is not alleged that the appellants were parties to or successors in interest by title subsequent to the commencement of the *mandamus* proceeding, or that the appellants are litigating for the same thing in the same capacity, or that they had notice, actual or constructive, of the pendency of the *mandamus* proceeding. The appellants were not bound thereby. (Code Civ. Proc., sec. 1908.) In the *mandamus* proceeding the Town of Redwood City and its officers were proceeded against, not as the representatives of all of the taxpayers of said town, or of any taxpayers, but as the agents of district number 13 and district number 14, which districts, as entities, at all times stood as opposed to, and not as parties with, or the predecessors of, these appellants. The plea had no merit.

The purported second assessment had no basis to support it. The judgment is reversed, and on the agreed statement of facts the trial court is directed to enter judgment for the appellants for their costs.

Nourse, J., and Langdon, P. J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1924.

All the Justices concurred.